**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES A. JURACEK and
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, &
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),

    Plaintiffs,

v.

Civil Action No. 13-CV-10190
Honorable Denise Page Hood

CITY OF DETROIT, CITY OF DETROIT
POLICE DEPARTMENT and COBO
CENTER, Operated by DETROIT REGIONAL
CONVENTION FACILITY AUTHORITY,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFFS'**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

On January 15, 2013, Plaintiffs James Juracek and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) filed a two-count verified complaint against the City of Detroit, City of Detroit Police Department, and Cobo Center. Plaintiffs allege that the Defendants violated their First Amendment Freedom of Speech by prohibiting Plaintiffs from displaying their signs on the sidewalk adjacent to the Cobo Center. Plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary Injunction on January 17, 2013. Defendants have not filed a response and have notified the Court that a response was not forthcoming. For the reasons stated below, Plaintiffs' Motion for Temporary Restraining Order is **GRANTED**.

**I.**    **BACKGROUND**

Nissan North America, Inc. (Nissan) operates an automobile assembly plant in Canton, Mississippi.  (Verified Compl. ¶9)  Workers at the Canton plant have sought an agreement with Nissan on an election process where the workers can vote on whether to form a union.  (Verified Compl. ¶9)  The UAW has assisted with these efforts.  (Verified Compl. ¶9) Various community groups in Mississippi have also joined the efforts.  (Verified Compl. ¶10)

Juracek, an UAW representative, was responsible for coordinating public activities at the 2013 North American International Auto Show (Auto Show).  The Auto Show is a yearly automobile exhibition show held at Cobo Center.  (Verfied Compl. ¶8, 13)  Cobo Center is on 1 Washington Boulevard in Detroit, Michigan and is operated by the Detroit Regional Convention Facility.  (Verified Comp. ¶5)

On January 7, 2013,  Juracek and another UAW member met with Auto Show Chief of Security Carl Berry and Cobo Center's Manager of Public Safety and Security Bruce Smith.  (Verified Compl. ¶14)  During that meeting, Juracek informed Berry that UAW members intended to display signs in relation to the dispute with Nissan at the 2013 Auto Show.  (Verified Compl. ¶15)  Berry indicated that signs could not be displayed inside Cobo Center but displaying signs outside of Cobo Center was not his concern.  (Verified Compl. ¶15)

On January 14, 2013, Juracek and 15 others displayed signs on various points on the sidewalks adjacent to the Cobo Center, on the west side of Washington Boulevard.  (Verified Compl. ¶16)  The signs were held by hand and displayed at chest level and those holding signs stood still.  (Verified Compl. ¶17)  The signs were approximately 26 inches wide an 40 inches high and displayed the name of an employee at the Nissan facility in Canton, Mississippi with the words "Nissan Technician, Mississippi, Threatened by Nissan."  (Verified Compl. ¶17)

Shortly after Juracek and others began displaying the signs, Detroit Police Department officers told Juracek that the signs could not be displayed on the west side of Washington Boulevard because Cobo Center had advised them that its property extended to the edges of the streets surrounding the Center. (Verified Compl. ¶19)  The officers informed the group that they had to move to the east side of Washington Boulevard if they wanted to continue displaying their signs. (Verified Compl. ¶20)  They complied. (Verified Compl. ¶20)

Cobo Center Regional Vice President and General Manager Thom Connors called Juracek later on January 14 and they scheduled a meeting on January 15, 2013 at the Cobo Center. (Verified Comp. ¶21)  Connors, Smith, and Berry, other Cobo Center representatives, and two Detroit Police Officers, including Lt. U. Renee Hall met with Juracek. (Verified Comp. ¶22)  Connors indicated that the sidewalk space on the west of Washington Boulevard was Cobo Center property and signs could not be displayed there. (Verified Comp. ¶23)  Connors provided a property survey, which actually showed that the sidewalk space on the west of Washington Boulevard was actually east of Cobo Center and a public sidewalk. (Verified Compl. ¶24)  Lt. Hall noted that the display of signs presented a safety concern; he did not cite any authority for his conclusion. (Verified Compl. ¶25)

## II.   ANALYSIS

Federal Rule of Civil Procedure 65(b) allows the Court to issue a temporary restraining order without notice to the opposing party if the following circumstances are met:

> (A)   specific facts shown by affidavit or by a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;

> (B) the movant's attorney certifies to the court in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Rule 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a request. 1966 Advisory Committee Note to 65(b). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 (1969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504–06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507–08; *Workman v. Bredesen,* 486 F.3d 896, 904–05 (6th Cir. 2007).

Regarding the irreparable injury requirement, it is well established that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511–12. "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Newsome v. Norris,* 888 F.3d 371, 378 (6th Cir. 1989). Plaintiffs have shown that they will be irreparably harmed absent a temporary restraining order; they will be unable to display their signs or communicate their ideas to Auto Show attendees. This factor weighs in Plaintiffs' favor.

Turning to the likelihood of success on the merits, the Court is convinced that Plaintiffs are likely to demonstrate success on the merits. The First Amendment, applied to state and local governments through the Fourteenth Amendment, prohibits the government from making any law that "abridge[s] the freedom of speech." U.S. Const. amend I; *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005). The Court must ask itself three questions when determining the constitutionality of a speech regulation: (1) whether the speech is protected by the First Amendment; (2) the type of forum at issue and the standard applied to that forum; and (3) whether the restriction satisfies the applicable standard. *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). Basic in our jurisprudence is the idea that public streets and sidewalks are public fora; public "streets . . . have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 515 (1939); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).

It is apparent that the public street surrounding Cobo Center is a public forum.[1] Defendants have not objected to Plaintiffs' designation of the west side of Washington Boulevard as a public forum. However, if Cobo Center were to argue that the sidewalks surrounding it are private property, which it has not, the conclusion would remain the same because the streets surrounding Cobo Center blend into the public sidewalk and there appears to be no way to distinguish alleged private property from public streets. *See United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.,* 383 F.3d 449, 452 (6th Cir.

---

[1] Attached to their motion, Plaintiffs provided a city survey and photographs of the street adjacent to Cobo Center that is at issue.

2004) (finding that the privately owned sidewalk surrounding a church was a public forum when the sidewalk "blend[ed] into the urban grid, borders the road, and looks just like any public sidewalk" and was public thoroughfare.).

A content-based regulation on speech in a traditional public forum must pass strict scrutiny and will be invalidated unless the government is able to show that the regulation is necessary to satisfy a compelling interest and is narrowly tailored to meet that interest. *Perry*, 460 U.S. at 45; *Cornelius v. NAACP Legal Defense Fund & Educ. Fund, Inc.,* 473 U.S. 788, 800 (1985). Content-neutral regulations, which regulate the time, place, and manner of speech, are appropriate if they are narrowly tailored to achieve a significant government interest and leave open alternative channels of communication. *Id.* It appears that the regulation is content-specific. Detroit Police Officers singled out Plaintiffs to move across the street. Plaintiffs were standing on the street holding signs. Plaintiffs basically had the appearance of any other bystander standing on a busy city street with the addition of a 26 x 40 sign that criticized an Auto Show participant. It is not clear that telling someone who is standing still with a sign to stand sill across the street is narrowly tailored to any government interest in safety.

Furthermore, it appears that the verbal safety regulation, whatever it may be, is unconstitutionally vague. The due process clause of the Fourteenth Amendment is implicated when a vague regulation "trap[s] the innocent by not providing fair warning" or "fail[s] to provide explicit standards guiding their enforcement impermissibly delegat[ing] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir.

1998) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)) (internal quotations omitted).

Detroit Police Officers asked Plaintiffs to move across the street due to safety concerns. However, they failed to cite a specific ordinance supporting their decision. After meeting with Plaintiffs, Detroit Police Officers still failed to provide any basis for requiring Plaintiffs to move with their signs across the street. There is no way that any reasonable person would have notice that their conduct is prohibited or what minimal guidelines there are for enforcement. Detroit Police Officers requiring Plaintiffs to move across the street is nothing more than "because I said so" logic. Essentially, they have exercised unfettered discretion to choose who may assemble on the sidewalk and who may not based on a vague, if any, designation of what may be a safety concern. This regulation is unconstitutionally vague as it applies to Plaintiffs.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order [Docket No. 5, filed January 17, 2013] is **GRANTED** pursuant to Fed. R. Civ. P. 65(b).

**IT IS FURTHER ORDERED** that Defendants are **ENJOINED** from prohibiting Plaintiffs from displaying placards on the west side of Washington Boulevard. This temporary restraining order expires within 14 days of entry of the order. Fed. R. Civ. P. 65(b)(2).

**IT IS FURTHER ORDERED** that although Plaintiffs have not addressed the security requirement set forth in Fed. R. Civ. P. 65(c), the Court will not require a security since the matter involves a constitutional issue affecting the public.

**IT IS FURTHER ORDERED** that Plaintiffs file a proof of service that Defendants were served with this Order.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: January 18, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 18, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager