UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. JURACEK and
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, &
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),

    Plaintiffs,

v.

Civil Action No. 13-CV-10190
Honorable Denise Page Hood

CITY OF DETROIT, CITY OF DETROIT
POLICE DEPARTMENT and COBO
CENTER, Operated by DETROIT REGIONAL
CONVENTION FACILITY AUTHORITY,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

On December 23, 2013, Plaintiffs James Juracek and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") filed a two-count Amended Verified Complaint captioned "count Amended Verified Complaint for a Temporary Restraining Order and Other Relief" against the City of Detroit (the "City"), City of Detroit Police Department, and Cobo Center.  **[Docket No. 30]**  Plaintiffs allege that the Defendants are liable under 42 U.S.C. § 1983 for attempting to violate Plaintiffs' First Amendment right

1

to Freedom of Speech by prohibiting Plaintiffs from displaying their signs on the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center during the 2014 Auto Show.  Before the Court is Plaintiffs' Motion for Temporary Restraining Order.  **[Docket No. 34, filed December 23, 2013]**  Both Defendant Cobo Center **[Docket No. 42]** and Defendant City of Detroit **[Docket No. 43]** filed a response in opposition on January 8, 2014.  Plaintiffs filed a reply on January 9, 2014.  **[Docket No. 45]**  For the reasons stated below, Plaintiffs' Motion for Temporary Restraining Order is **GRANTED**.

I.     BACKGROUND

Nissan North America, Inc. ("Nissan") operates an automobile assembly plant in Canton, Mississippi.  **[Verified Compl. ¶9; Amended Verified Compl. ¶10]**  Workers at the Canton plant have sought an agreement with Nissan on an election process where the workers can vote on whether to form a union.  **[Verified Compl. ¶9; Amended Verified Compl. ¶10]**  The UAW has assisted with these efforts.  **[Verified Compl. ¶9; Amended Verified Compl. ¶10]**  Various community groups in Mississippi have also joined the efforts.  **[Verified Compl. ¶10; Amended Verified Compl. ¶11]**

Juracek, an UAW representative, was responsible for coordinating public activities at the 2013 North American International Auto Show (the "Auto Show").

2

The Auto Show is a yearly automobile exhibition show held at Cobo Center. **[Verified Compl. ¶8, 13; Amended Verified Compl. ¶9, ]** Cobo Center is located at 1 Washington Boulevard in Detroit, Michigan and is operated by the Detroit Regional Convention Facility. **[Verified Compl. ¶5; Amended Verified Compl. ¶7]**

On January 17, 2013, Plaintiffs filed a Motion for Temporary Restraining Order. **[Docket No. 5]** The facts alleged in this motion are identical to those alleged in Plaintiffs' January 17, motion with little exception. In that Motion, Plaintiffs stated that on January 7, 2013, Juracek and another UAW member met with Auto Show Chief of Security Carl Berry and Cobo Center's Manager of Public Safety and Security Bruce Smith. **[Verified Compl. ¶14; Amended Verified Compl. ¶15]** During that meeting, Juracek informed Berry that UAW members intended to display signs in relation to the dispute with Nissan at the 2013 Auto Show. **[Verified Compl. ¶15; Amended Verified Compl. ¶16]** Berry indicated that signs could not be displayed inside Cobo Center but displaying signs outside of Cobo Center was not his concern. **[Verified Compl. ¶15; Amended Verified Compl. ¶16]**

On January 14, 2013, Juracek and 15 others displayed signs at various points on the sidewalks adjacent to the Cobo Center, on the west side of Washington

3

Boulevard.  **[Verified Compl. ¶16; Amended Verified Compl. ¶17]**  The signs were held by hand and displayed at chest level and those holding signs stood still.  **[Verified Compl. ¶17; Amended Verified Compl. ¶18]**  The signs were approximately 26 inches wide and 40 inches high and displayed the name and photograph of an employee at the Nissan facility in Canton, Mississippi with the words "Nissan Technician, Mississippi, Threatened by Nissan."  **[Verified Compl. ¶18; Amended Verified Compl. ¶19]**

Shortly after Juracek and others began displaying the signs, Detroit Police Department officers told Juracek that the signs could not be displayed on the west side of Washington Boulevard because Cobo Center had advised them that its property extended to the edges of the streets surrounding the Center.  **[Verified Compl. ¶19; Amended Verified Compl. ¶20]**  The officers informed the group that they had to move to the east side of Washington Boulevard if they wanted to continue displaying their signs.  **[Verified Compl. ¶20; Amended Verified Compl. ¶21]**  The group complied.  **[Verified Compl. ¶20; Amended Verified Compl. ¶21]**

Cobo Center Regional Vice President and General Manager Thom Connors called Juracek later that day (January 14, 2013), and they scheduled a meeting to be held on January 15, 2013, at the Cobo Center.  **[Verified Compl. ¶21;**

**Amended Verified Compl. ¶22]**  Connors, Smith, and Berry, other Cobo Center representatives, and two Detroit Police Officers, including Lt. U. Renee Hall met with Juracek.  **[Verified Compl. ¶22; Amended Verified Compl. ¶23]**  During this meeting, Connors indicated that the sidewalk space on the west of Washington Boulevard was Cobo Center property and signs could not be displayed there.  **[Verified Compl. ¶23; Amended Verified Compl. ¶24]**  Connors provided a property survey, which showed that the sidewalk space on the west of Washington Boulevard was in fact east of Cobo Center and a public sidewalk.  **[Verified Compl. ¶24; Amended Verified Compl. ¶25]**  Lt. Hall noted that the display of signs presented a safety concern, though he and the others in attendance failed to cite any authority for his conclusion.  **[Verified Compl. ¶25; Amended Verified Compl. ¶26]**  On January 18, 2013, this Court entered an Order Granting Plaintiffs' Motion for Temporary Restraining Order **[Docket No. 11]**, enjoining Defendants "from prohibiting Plaintiffs from displaying placards on the west side of Washington Boulevard" for fourteen days following entry of the Order.

In Plaintiffs' Amended Complaint, Plaintiffs note that "Defendant Cobo Center . . . advised Plaintiffs that it believes Plaintiffs' January 17, 2013, Complaint sought relief only in connection with the 2013 Auto Show." **[Amended Verified Compl. ¶34]**  Based on this representation, Plaintiffs contend that they

"reasonably believe Defendants may interfere with [their] distribution of leaflets, and display of signs, on the City sidewalk on the west side of Washington Boulevard during the 2014 Auto Show." **[Amended Verified Compl. ¶35]** Additionally, Plaintiffs apprise the Court that beyond the allowance of the Court's January 18, 2013, Order, Plaintiffs intend to "distribute leaflets and display signs on the exterior sidewalk and plaza areas between the City sidewalks and the Cobo Center Building." **[Amended Verified Compl. ¶36]** Plaintiffs state that Defendant Cobo Center believes these areas "are its property" and "will seek to prohibit Plaintiffs from engaging in such activity at the 2014 Auto Show." Plaintiffs request that this Court "issue a Temporary Restraining Order barring Defendants from prohibiting Plaintiffs from holding placards and leafleting on the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center and on the exterior public plazas and sidewalks between the City sidewalk and the Cobo Center building." **[Pl. Mot. at 25]**

It is apparent that all parties agree that the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center is a "public forum," therefore, by its nature, granting Plaintiffs freedom to exercise their First Amendment rights. For this reason, the Court will address only the contested areas, the exterior public plazas and sidewalks between the City sidewalk and the Cobo Center building

stairways leading up to the entry door, for purposes of this motion. The Court notes that the ordinance Defendants rely on in this case states the following:

> Any and all Demonstration Activities must be conducted outside of the Cobo Center on public property so as not to obstruct or interfere with traffic flow, entrances, exits, access to Cobo Center for the Authority, its employees, agents, permittees, licensees, vendors, contractors, Cobo Center security, law enforcement, fire department representatives, or any other invitees of the Authority (the "Authority's Invitees") or cause or create safety issues or concerns, unless otherwise specifically authorized in writing by the Authority.

**[Def. Ex. E].** Demonstration Activities are defined as "any or all of picketing, leafleting, and/or demonstrations." **[Def. Ex. E].**

## II. ANALYSIS

Federal Rule of Civil Procedure 65(b) allows the Court to issue a temporary restraining order if the following circumstances are met:

> (A) specific facts shown by affidavit or by a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;
>
> (B) the movant's attorney certifies to the court in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Rule 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a

request. 1966 Advisory Committee Note to 65(b). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and has exhausted reasonable efforts to give the adverse party notice.[1] *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 (1969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504–06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. *Workman v. Bredesen,* 486 F.3d 896, 904–05 (6th Cir. 2007); 11 Wright & Miller at § 2951, at 507–08.

On January 18, 2013, this Court entered an Order Granting Plaintiffs' prior Motion for Temporary Restraining Order, regarding the 2013 Auto Show. **[Docket**

---

[1] The Court must note the unique procedural history in this case, as it relates to the instant Motion for Temporary Restraining Order. On December 16, 2013, the Court held a status conference with all parties in this case. At that conference, Plaintiffs notified the Court of their concern regarding their plan to exercise their First Amendment rights at the 2014 Auto Show. Defendants expressed their opinion that the temporary restraining order granted by this Court on January 18, 2013, did not extend to the 2014 Auto Show because the time of effect had elapsed. On December 19, 2013, the Court issued an order captioned "Order Regarding Various Dates" which granted Plaintiffs leave to file an Amended Complaint as well as a new Motion for Temporary Restraining Order. **[Docket No. 19]** This Order also granted Defendants leave to file a response to Plaintiffs' motion and provided Plaintiffs the opportunity to reply to any response Defendants filed. Though the Court is satisfied that the nature of this motion is one requesting a temporary restraining order, the Court notes that in this instance, the issue was fully briefed and all parties were given notice of the pendency of this motion.

**No. 11]** In that order, the Court determined that Plaintiffs' motion satisfied the requirements necessary to issue a temporary restraining order. Specifically, the Court determined that Plaintiffs made an adequate showing that they would be "irreparably harmed absent a temporary restraining order" because they would "be unable to display their signs or communicate their ideas to Auto Show attendees." **[Order at 4]** As to the likelihood of success on the merits, the Court determined that "because the streets surrounding Cobo Center blend into the public sidewalk and there appears to be no way to distinguish alleged private property from public streets," the public street and sidewalk surrounding Cobo Center is a "public forum." **[Order at 5]** The Court addressed the requirements for granting a temporary restraining order as they pertain to the facts and request discussed in the instant motion below.

### A. Likelihood of Success on the Merits

As to the likelihood of success on the merits, the Court is again convinced that Plaintiffs are likely to demonstrate success on the merits. The First Amendment, applied to state and local governments through the Fourteenth Amendment, prohibits the government from making any law that "abridge[s] the freedom of speech." U.S. Const. amend I; *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005). The Court must ask itself three questions when

determining the constitutionality of a speech regulation: (1) whether the speech is protected by the First Amendment; (2) the type of forum at issue and the standard applied to that forum; and (3) whether the restriction satisfies the applicable standard. *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). Basic in our jurisprudence is the idea that public streets and sidewalks are public fora; public "streets . . . have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

It is apparent that the public street surrounding Cobo Center is a public forum. Defendants do not object to Plaintiffs' designation of the west side of Washington Boulevard as a public forum and the Court again grants Plaintiffs the opportunity to exercise their First Amendment rights in this area. Though Defendant Cobo Center does not dispute the labeling of "public forum" to that space, Defendant argues that its "'front porch,' plaza area, and stairways leading up to the entry doors is on Cobo Center property, not public sidewalks," and are "non-public fora."

The Court notes, as it did in its January 18, 2013, Order, that the area surrounding Cobo Center blends into the public sidewalk and there appears to be no way to distinguish alleged private property from public streets. This "blending" includes the plaza area as well as the stairway. Defendants have not provided the Court with any documentation to show a demarcation that sets these areas apart from the public sidewalk. *See United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 452 (6th Cir. 2004) (finding that the privately owned sidewalk surrounding a church was a public forum when the sidewalk "blend[ed] into the urban grid, borders the road, and looks just like any public sidewalk" and was public thoroughfare.). For these reasons, the Court is satisfied that the plaza area is a "public forum" for purposes of First-Amendment protection. The Court is also satisfied that the stairway, though connected and leading directly into the Cobo Center, is a "public forum" as related to Plaintiffs' ability to exercise their First Amendment rights in this area.

A content-based regulation on speech in a traditional public forum must pass strict scrutiny and will be invalidated unless the government is able to show that the regulation is necessary to satisfy a compelling interest and is narrowly tailored to meet that interest. *Perry*, 460 U.S. at 45; *Cornelius v. NAACP Legal Defense Fund & Educ. Fund, Inc.,* 473 U.S. 788, 800 (1985). Content-neutral regulations,

which regulate the time, place, and manner of speech, are appropriate if they are narrowly tailored to achieve a significant government interest and leave open alternative channels of communication. *Id.* It appears that the regulation in this case is content-neutral as the Court has no reason to believe that Plaintiffs are the only citizens required to comply. However, the Court is not convinced that Defendants' proposed regulation of the space "leave[s] open alternative channels of communication" or is "narrowly tailored to achieve a significant government interest."

Assuming, arguendo, that the plaza area and stairways leading to the entry doors are not "public fora" for First Amendment purposes, the Court is still unpersuaded that Defendants' proposed restrictions are reasonable. Although "[c]ontent-based restrictions on speech in public and designated public fora are subject to strict scrutiny," *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007)—a test that does not apply here—"[t]he government may lawfully restrict speech in a nonpublic forum so long as the restrictions are viewpoint neutral and *reasonable in light of the purpose served by the forum*." *Id.* at 257 (emphasis added). For rules that restrict speech in nonpublic fora, the Court "appl[ies] the traditional time-place-and-manner test to the regulation." *Jobe v. City of Catlettsburg*, 409 F.3d 261, 267 (6th Cir. 2005) (citing *Members of City Council of Los Angeles v.*

12

*Taxpayers for Vincent*, 466 U.S. 789, 808, 815 (1984)). "To qualify as a reasonable time-place-and-manner regulation of speech, the [restriction] must (1) be content-neutral, (2) serve a significant government interest, (3) be narrowly tailored to serve that government interest and (4) leave open ample alternative channels of communication." *Id.* The Court again notes its determination that Defendants' restriction is content-neutral. However, the Court is not satisfied that the restriction—though possibly serving a government interest which the Court views as public safety—is "narrowly tailored" to serve that government interest and leaves open ample alternative channels of communication. This factor weighs in favor of granting Plaintiffs' motion.

### B. Irreparable Harm

It is well established that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). An injury is not fully compensable by money damages, however, if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511–12. "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Newsome v. Norris,* 888 F.3d 371, 378 (6th Cir. 1989). Here, Plaintiffs have made an adequate showing that they will be irreparably harmed

absent a temporary restraining order enjoining Defendants from preventing them from holding placards and leafleting on the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center and on the exterior public plazas and sidewalks between the City sidewalk and the Cobo Center building. This factor weighs in Plaintiffs' favor.

### C. Potential Harm to the Non-moving Party and Whether the Public Interest is Served

When determining whether to grant a motion for preliminary injunction, the Court must also consider whether issuance of an injunction will cause substantial harm to others and whether the public interest is served by issuance of an injunction. *See Teamsters Local Union 299 v. U.S. Truck Co. Holdings*, 87 F. Supp. 2d 726, 733 n.2 (E.D. Mich. 2000) (citations omitted). Reviewing the pleadings currently before the Court, the Court is satisfied that these factors also weigh in Plaintiffs' favor. The Court has considered whether issuance of a temporary restraining order will cause substantial harm to others, including the non-moving party. The Court appreciates Defendant Cobo Center's interest in preventing a "potentially hazardous condition." The Court notes Defendants' references to "shuttle busses dropping off at the curb, school busses, private chauffeured transportation, public and private shuttles, taxi-drive-up, and valet activities taking place in that area." However, the Court is not convinced that these

activities rise to the level necessary to curb Plaintiffs' rights, holding signs and leafleting being "expressive activit[y] involving 'speech' protected by the First Amendment." *United States v. Grace*, 461 U.S. 171, 176 (1983). Defendants have presented no evidence, and the Court finds none, that Plaintiffs' activities would "cause a serious safety issue due to congestion and vehicle movements." For this reason, this factor weighs in favor or granting Plaintiffs' motion.

The Court is also satisfied that granting a temporary restraining will serve the public interest. Plaintiffs are attempting to exercise their right to engage in protected speech. Public interest weighs in favor of Plaintiffs having the opportunity to do so.

### III. CONCLUSION

In a letter dated January 6, 2014, Defendant City of Detroit stated that it "had no intention of prohibiting demonstrations on the public sidewalks at this year's Auto Show . . . ." **[Pl. Reply at Ex. 7]** The Court recognizes that "[c]ertain limitations might be appropriate if the demonstrators were to block ingress or egress, create a dangerous condition or incite violence," but as noted by the City, there is no reason to believe that this is Plaintiffs' intention. The Court determines that the areas of requested access, namely the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center, the exterior public plazas

including the stairway, and the sidewalks between the City sidewalk and the Cobo Center building are "public fora." Further, even if the Court deems the areas outside of the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center as "non-public fora," the Court is unpersuaded that Defendants' proposed restriction is reasonable because the Court is not convinced that Plaintiffs' proposed actions pose the "legitimate concern for public safety and security during the auto show" that Defendants purport.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order **[Docket No. 34, filed December 23, 2013]** is **GRANTED** pursuant to Fed. R. Civ. P. 65(b).

**IT IS FURTHER ORDERED** that Defendants are **ENJOINED** from prohibiting Plaintiffs from holding placards and leafleting on the sidewalk on the west side of Washington Boulevard adjacent to the Cobo Center and on the exterior public plazas and sidewalks between the City sidewalk and the Cobo Center building. This temporary restraining order expires within 14 days of entry of the order. Fed. R. Civ. P. 65(b)(2).

**IT IS FURTHER ORDERED** that although Plaintiffs have not addressed the security requirement set forth in Fed. R. Civ. P. 65(c), the Court will not

require a security since the matter involves a constitutional issue affecting the public.

**IT IS FURTHER ORDERED** that for the limited purpose of the entry of this Order **ONLY**, and the directives therein, the Order Staying Action against the City of Detroit and the Detroit Police Department **[Docket No. 24, August 12, 2013]** is lifted. The stay otherwise continues.

**IT IS FURTHER ORDERED** that Defendant, City of Detroit's Motion for Leave to File Amended Brief in Opposition to Plaintiffs' Motion for Temporary Restraining Order is **GRANTED**.[2]

**IT IS SO ORDERED**.


Dated: January 10, 2014
s/Denise Page Hood
DENISE PAGE HOOD
U.S. DISTRICT COURT JUDGE


I hereby certify that a copy of this order was served upon the attorneys of record on this date, January 10, 2014, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry
Case Manager

---

[2] On January 10, 2014, Defendant City of Detroit delivered to the Court a Motion for Leave to File Amended Brief in Opposition to Motion for Temporary Restraining Order as well as an Amended Answer to Plaintiffs' Motion for Temporary Restraining Order.